In re Craig T. BICKNELL, Debtor.

STAMCO SUPPLY, INC., Plaintiff,

v.

Craig T. BICKNELL, Defendant.

Adv. No. 1–82–0257.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Feb. 24, 1983.

Jeffrey P. Harris, Cincinnati, Ohio, for defendant.

Matthew T. MacLeid, Cincinnati, Ohio, for plaintiff.

DECISION

BURTON PERLMAN, Bankruptcy Judge.

Defendant in this case is a debtor who filed a personal Chapter 7 bankruptcy case.

He was at that time a vice-president of W.D. Kuhlman, Inc. Kuhlman is in the business of selling heating and air conditioning equipment. Plaintiff in this adversary proceeding is a supplier of Kuhlman. Kuhlman is presently a Chapter 11 debtor in this Court. Plaintiff here sues defendant as guarantor of the debt of Kuhlman to plaintiff.

Defendant filed his bankruptcy case June 3, 1980. Plaintiff in this case was not listed as his creditor in his bankruptcy schedule. He received his discharge on July 10, 1981, and his case was closed December 7, 1981. Thereafter plaintiff herein filed suit against defendant in the Hamilton County Municipal Court to recover the amount of the balance due plaintiff from Kuhlman, $7,824.50, which plaintiff says was guaranteed by defendant. Defendant then applied to reopen his case in this Court, and after notice to plaintiff, and hearing at which plaintiff made no appearance, we permitted the case to be reopened.· Defendant then removed the case to this court from the State Court. The case came on for a bench trial at the conclusion of which we reserved decision.

The complaint alleges that $1,100.00 has been paid towards said note, but no payments have been received after October 1, 1980. It alleges that the principal balance due is $6,159.53 with accumulated interest of $1,664.97, for a total of $7,824.50 recited in the prayer.

The chief piece of evidence in the case is promissory note dated June 17, 1980 for the principal amount of $7,516.83 (PX–1). The maker of the note is W.D. Kuhlman Inc. At the bottom of the page the signature appearing is that of defendant along side an "X". On the reverse side of the note at the top of the page is a provision that the undersigned "hereby guarantee the prompt payment of the within note at maturity". The signature of defendant appears beneath that language. The balance of the reverse side of the note contains a payment schedule for the note. The only witnesses at the trial were defendant and Dennis Bryll, controller of plaintiff. Bryll entered the employ of plaintiff only subsequent to the events with which we are here concerned, and his only function was to present a verification of the balance due plaintiff on the note.

During his testimony, defendant stated that he received the note after he had filed his own bankruptcy. The circumstances surrounding the signing were that Ostrowsky, the account manager of plaintiff, telephoned, stated that he was concerned about the account of Kuhlman and it was agreed that an arrangement such as that embodied in PX–1 would be entered into between the parties. Defendant said that he would sign a note as an officer of Kuhlman. Defendant testified that he scratched out "I/We" and "et al." on the first line of the note in order to avoid any notion that he was undertaking a personal liability. He testified that after the conversation with the account manager, three notes were received in the mail. Two others which were not executed were intended for defendant's signature and that of another officer of Kuhlman. These were not signed because neither of them wanted to undertake any personal liability.

Defendant testified that Kuhlman had made purchases of plaintiff after the execution of the promissory note. He did not recall the terms of such further purchases, but he did indicate that at that time Kuhlman was in financial difficulty and was on a cash basis with most suppliers.

The shape of the case is that by presenting the note and the current state of the account, plaintiff believes that it has made its case. Defendant argues in opposition, first, that there was a mutual mistake, in that defendant did not intend to undertake any personal liability and did not understand that he was doing so. Defendant testified that he had indicated this to personnel of plaintiff at the time, and it is a telling point that plaintiff has failed to present the testimony of the account manager who was the one with whom the defendant dealt on behalf of Kuhlman, to testify in person or by deposition to the contrary.

Defendant argues in the alternative that this note was a reaffirmation which, without the approval of the Court, cannot be given effect. Plaintiff dispositively counters this position by the observation that the note was not executed until after defendant filed his bankruptcy, so that no reaffirmation is involved. The question of consideration was discussed. On its face, it would appear that there was no consideration for the guarantee. Plaintiff maintains, however, that the benefit to Kuhlman of the forbearance to file suit by plaintiff against Kuhlman, that is the benefit to a third party, is sufficient consideration to support the undertaking by defendant.

While defendant contends that he is entitled to succeed because there was a mutual mistake of fact, this appears to be a mischaracterization of the situation. The evidence shows that plaintiff was interested in getting a personal guarantee from defendant, for, in addition to the instrument here in issue, PX–1, which defendant did sign, plaintiff also sent a separate instrument which would have directly and explicitly committed defendant personally. An inference which flows from this fact is that there was no mistake on plaintiff's part; it did desire defendant's personal guarantee. It is equally clear that there was a mistake on the part of defendant when he signed the guarantee, a unilateral mistake, for he did not wish to undertake a personal guarantee. He destroyed the separate instrument which would have committed him personally. He struck through language in PX–1 which he thought could have been interpreted as binding him personally. He signed the personal guarantee on the reverse of the promissory note by mistake. We find this to be a fact. Everything that defendant testified to supports his position that he signed the guarantee without realizing that he was committing himself personally and contrary to that intention. We find his testimony to be credible, and there is no evidence to the contrary. We are, then, concerned with a unilateral mistake, and the question becomes whether and under what circumstances one may be entitled to relief for a unilateral mistake.

The general rule is that the contract of one who was mistaken as to a material fact is voidable if (1) it would be unconscionable to enforce the contract, or (2) the other party had reason to know of the mistake. Restatement 2d, Contracts, Section 153. 17 C.J.S. Section 143, Mistake of One Party Only, at p. 891. It would be unconscionable to enforce defendants guarantee notwithstanding his mistake in executing it, because there was no indication that plaintiff required his guarantee in order to continue to do business with his company, coupled with the fact that defendant at the relevant time was himself in a personal bankruptcy, the object of which was to relieve him of his personal obligations and give him a fresh start. The alternative basis for relief from the consequences of a unilateral mistake, that the other party knew of the mistake, is also true here. Defendant testified that prior to the sending of the promissory note by plaintiff to Kuhlman, defendant had discussed matters with Ostrowsky, an agent of plaintiff, and had made it clear that he was agreeable, but only in his role as a corporate officer, to the arrangement contained in the note which he signed. Further tipping the equities in favor of defendant is the fact that there is no evidence whatever that plaintiff did anything in reliance upon the guarantee signed by defendant, and reliance is a factor which has been recognized as being of significance in this context. 38 Am.Jur.2d 1059.

Because we find the foregoing grounds sufficient to decide the case, we do not reach the question of consideration. We find the issues in favor of defendant and will dismiss the complaint.

The foregoing constitutes our findings of fact and conclusions of law.